**Matt. T. BURKETT, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 12A04–9707–CR–265.

Court of Appeals of Indiana.

Feb. 13, 1998.

Rehearing Denied April 6, 1998.

Transfer Denied June 10, 1998.

Kelly Leeman, Logansport, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

1. Ind.Code 35–48–4–11.

## OPINION

DARDEN, Judge.

*STATEMENT OF THE CASE*

Matt Burkett appeals the denial of his motion to suppress and his conviction in a bench trial of possession of marijuana, a class A misdemeanor.[1]

We affirm.

### ISSUES

I. Whether the trial court erred in denying Burkett's motion to suppress.

II. Whether the trial court erred in admitting evidence.

### FACTS

On November 3, 1996, Clinton County Sheriff's Department Officer John Moore observed Matt Burkett driving his car 78 miles per hour in a 55 miles per hour zone. Moore stopped Burkett, smelled alcohol, and asked Burkett to get out of his car to take some field sobriety tests. Burkett failed one of the tests, and Moore administered a portable breath test which showed that Burkett had a BAC of .08. Moore escorted Burkett to Moore's police car to transport him to the Clinton County Jail for a certified breath test.

Before placing Burkett in the police car, Moore conducted a patdown search of Burkett for officer safety. During the patdown, Moore felt a round, hard object that was three to four inches long. Based on his training and experience, Moore recognized the object as being a "one hitter"—a pipe used to smoke marijuana. (R. 45). Moore removed the object from Burkett's pocket and discovered that it was not a pipe but a green leafy substance tightly rolled in a plastic bag. Moore drove Burkett to the jail where the officer conducted a field test on the substance. The result of the test was positive for marijuana.

Burkett was charged with possession of marijuana, and he filed a motion to suppress the drug. The trial court conducted a joint hearing on the motion to suppress and bench trial on the possession charge. Thereafter,

the court issued an order denying Burkett's motion to suppress and finding him guilty of possession of marijuana.

## DECISION

### I. *Motion to Suppress*

Burkett first contends that the trial court erred in denying his motion to suppress the evidence of marijuana. Specifically, he argues that the warrantless search of his person and the seizure of the marijuana were beyond the scope of the Fourth Amendment and the "plain feel" doctrine adopted by the United States Supreme Court in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334. We disagree.

■ When evaluating the propriety of a warrantless search under the Fourth Amendment, we accept the factual findings of the trial court unless they are clearly erroneous. *State v. Lamar,* 680 N.E.2d 540, 542 (Ind.Ct.App.1997)(citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)). Findings of fact are clearly erroneous when the record lacks any facts or reasonable inferences to support them. *Id.* When determining whether the findings are clearly erroneous, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing from that evidence. *Id.* We will not judge witness credibility, or reweigh the evidence. *Id.* However, the ultimate determination of reasonable suspicion or probable cause is reviewed *de novo. Id.*

■ In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court determined that the Fourth Amendment to the United States Constitution permits a police officer to approach a person for purposes of investigating possible criminal behavior without probable cause to make an arrest, and to execute a reasonable search of the person for weapons for the officer's own protection. *Drake v. State,* 655 N.E.2d 574, 575 (Ind.Ct.App.1995). When conducting this search, the Court indicated that the officer need not be absolutely certain that the individual was armed but only that a reasonably prudent man in the same circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.*

■ Here, Burkett contends that the "record discloses no basis or justification for a patdown search articulated by the officer." Burkett's Brief, p. 11. However, our review of the record reveals that Moore stopped Burkett because he was driving 78 miles per hour in a 55 miles per hour zone. Moore smelled alcohol and performed some field sobriety tests on Burkett. When Burkett failed one of the tests, Moore administered a portable breath test which showed that Burkett had a BAC of .08. Moore escorted Burkett to Moore's police car to transport him to the county jail for a certified breath test. Before placing Burkett in the police car, Moore conducted a patdown search of Burkett for officer safety. Because at this point Moore would be alone in his vehicle with Burkett as he transported him to the county jail, a reasonably prudent man in the same circumstances would be warranted to pat down Burkett for his own safety. We find the circumstances in this case to be similar to those of the *Drake* case wherein we found that the search therein was lawful because it was conducted pursuant to a search for weapons. *See Drake,* at 577. Burkett's contention is therefore without merit.

■ Further, in *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court determined that police officers may seize contraband detected through the officer's sense of touch during the type of protective patdown search contemplated by *Terry. Dickerson,* 508 U.S. at 375–76, 113 S.Ct. at 2137, 124 L.Ed.2d at 346. Specifically, the Court reasoned as follows:

> If a police officer lawfully pats down a suspect's clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Id.* (footnote omitted).

■ This court has stated that to allow the admission of contraband seized without a

warrant under the "plain feel" doctrine, two issues are dispositive—1) whether the contraband was detected during an initial search for weapons rather than during a further search, and 2) whether the identity of the item was immediately apparent to the officer. *D.D. v. State*, 668 N.E.2d 1250, 1252 (Ind.Ct. App.1996). Here, during an initial patdown search conducted for his safety, Moore testified that he immediately recognized a "one-hitter"—a pipe used to smoke marijuana. (R. 45). Moore was subject to examination by both parties. He articulated to the trial court that he identified the object as being a "one-hitter"—a pipe used to smoke marijuana based upon his training and experience.

█ Nevertheless, Burkett contends that a pipe is not contraband. However, the pipe which Moore recognized was a "one-hitter"— a pipe used to smoke marijuana. (R. 45). Ind.Code 35-48-4-8.3 criminalizes the possession of drug paraphernalia. Therefore, drug paraphernalia, such as a "one-hitter" which Moore thought he recognized in Burkett's pocket, would be contraband, and Burkett's argument must fail.

Based on the foregoing, the trial court did not err in denying Burkett's motion to suppress.

## II. *Admission of Evidence*

Burkett further claims that the trial court erred in admitting the results of the field test which showed that the substance in the plastic bag was marijuana. According to Burkett, the results were inadmissible because the State failed to provide a sufficient foundation for both Moore's qualifications and the reliability of the field test as required by Ind.Evidence Rule 702. We disagree.

Evid.R. 702 provides in pertinent part as follows:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

█ Burkett first contends that the State failed to provide a sufficient foundation for Moore's qualifications. However, he has waived appellate review of this contention because he failed to make this objection at trial. *See Lock v. State*, 567 N.E.2d 1155, 1160 (Ind.1991), *cert. denied*, 503 U.S. 991, 112 S.Ct. 1686, 118 L.Ed.2d 400 (1992).

█ Waiver notwithstanding, Burkett's contention lacks merit. We will not disturb a trial court's determination that a witness is qualified to testify as an expert and render an expert opinion absent an abuse of discretion. *Ross v. State*, 665 N.E.2d 599, 601 (Ind.Ct.App.1996). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.*

█ Our review of the record reveals that Moore testified that 1) he had been trained to administer the field test; 2) he followed the proper procedures for the test; 3) the test consisted of three ampules of acid that change color to show the presence of marijuana; and 4) the field test was used routinely by the Sheriff's Department. We find no abuse of the trial court's discretion.

█ Burkett further contends, as he did at trial, that the State failed to present a sufficient foundation for the reliability of the field test. We review the decision of the trial court as to reliability under Evid.R. 702(b) for an abuse of discretion. *McGrew v. State*, 682 N.E.2d 1289, 1292 (Ind.1997).

█ In the *McGrew* case, McGrew argued that the State failed to provide a sufficient foundation for the reliability of hair comparison analysis. Our supreme court found that in determining reliability, there is no specific "test" or set of "prongs" which must be considered in order to satisfy Evid.R. 702(b). *Id.* Rather, possible means by which reliability may be established include judicial notice or sufficient foundation to convince the trial court that the relevant scientific principles are reliable. *Id.* at 1290. Thereafter, the appellate court reviewed the record which revealed that the trial court judge had noted that the results of this type

of test had been admitted in other Indiana cases. Our supreme court found a sufficient foundation for the reliability of the test results. Here, as in *McGrew,* the trial court noted that the results of this type of test have been admitted in other cases. *See e.g., Houston v. State,* 553 N.E.2d 117, 119 (Ind. 1990); *Bellamy v. State,* 259 Ind. 254, 286 N.E.2d 401 (1972). We find no abuse of trial court's discretion.

In his reply brief, Burkett directs us to *Carter v. State,* 685 N.E.2d 1112 (Ind.Ct.App. 1997), *trans. granted,* wherein this court found that the State failed to provide a sufficient foundation for the reliability of urinalysis test equipment. However, our supreme court granted the State's petition to transfer in *Carter,* and therefore, that decision does not constitute precedent. Ind.Appellate Rule 11(B); *Peterson v. State,* 689 N.E.2d 1290, 1292–93 (Ind.Ct.App.1998).

Affirmed.

RUCKER, J., concurs.

GARRARD, J., concurs in result.