**MEMORANDUM DECISION**

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 09 2016, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James R. Recker
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Levi Runnells,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 9, 2016

Court of Appeals Cause No.
11A01-1601-CR-30

Appeal from the Clay Superior Court

The Honorable Blaine Akers, Judge

Cause No. 11D01-1504-F6-263

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Levi Runnells (Runnells), appeals his conviction for theft, a Level 6 felony, Ind. Code § 35-43-4-2.

We affirm.

## ISSUE

Runnells raises one issue on appeal, which we restate as: Whether the trial court abused its discretion in admitting certain evidence.

## FACTS AND PROCEDURAL HISTORY

On April 1, 2015, Matthew Bault (Bault) was working as a manager at a CVS Pharmacy in Clay County, Indiana. During his shift, two men walked into the store: one of the men was wearing a black hooded sweatshirt, and the other, who was later identified as Runnells, had a Mohawk hairstyle. The hooded male wandered off in the store while Runnells asked where the razors and a type of pre-paid phone card were located. Because the men were acting suspiciously, after assisting Runnells, Bault went to the store's office located about twenty feet above the ground floor. The office had large windows which seemed like mirrors to customers. Bault observed Runnells pick a pink electric razor and then walk to the sunglasses stand in another part of the store. At the second location, Runnells placed the razor inside his pants pockets. After seeing Runnells' act of concealment, Bault called the police and gave a description of both men. While the police were on the way, the male wearing the hooded sweatshirt left the store after concealing a pair of sunglasses in his

hooded sweatshirt. Runnells remained in the store to purchase several other items. The moment Runnells walked out of the store, the police had arrived and detained the male with the hooded sweatshirt. Captain Dennis Archer (Captain Archer) of the Brazil Police Department approached Runnells and informed him about the theft complaint. Runnells denied taking anything from the store and he presented to Captain Archer a bag containing the merchandise he had purchased from the store and a matching receipt. However, because of the theft complaint, Captain Archer conducted a pat-down search on Runnells' exterior clothing. In the process, an electric razor that had been tucked in Runnells' pants fell on the ground, and a further search of Runnells' pants pockets yielded a car phone charger and a cord. When the items were returned to the store, Bault confirmed that the razor, car charger and cord, had been stolen from the store. Runnells was apprehended and transported to the police station. After being *Mirandarized*, Runnells was interrogated about the theft. Runnells stated that he stole the items just "for the thrill of stealing stuff." (Transcript p. 124).

[5] On April 6, 2015, the State filed an Information, charging Runnells with theft, a Level 6 felony, I.C. § 35-43-4-2. On June 3, 2015, Runnells filed a motion to suppress the items recovered from his search and the statements he made during the search. A suppression hearing was held on June 17, 2015, and the parties thereafter submitted their findings of facts and conclusions of law. On August 18, 2015, the trial court issued an Order denying Runnells' motion. Two days later, on August 20, 2015, Runnells requested certification for interlocutory

appeal but was denied. On August 24 through August 25, 2015, Runnells' jury trial was conducted. At the close of the evidence, the jury found Runnells guilty as charged. On December 11, 2015, the trial court conducted Runnells' sentence hearing and subsequently sentenced Runnells to an executed sentence of two and one-half years in the Department of Correction.

[6] Runnells now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[7] Runnells claims that the trial court erred when it denied his motion to suppress the evidence seized during the warrantless pat-down search. However, because Runnells is appealing following a conviction, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. A trial court has broad discretion in ruling on the admissibility of evidence. *Fentress v. State*, 863 N.E.2d 420, 422-23 (Ind. Ct. App. 2007).

[8] According to Runnells, the admission of the items recovered during the pat-down search violated the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[1] When reviewing a trial

---

[1] Runnells briefly asserts that the search was improper under Article 1, Section 11 of the Indiana Constitution, "which is identical to the Fourth Amendment." *Stark v. State*, 960 N.E.2d 887, 892 (Ind. Ct. App. 2012), *trans. denied*. However, a claim under the Indiana Constitution "turns on an evaluation of the

court's ruling on the admissibility of evidence obtained from an allegedly illegal search, we do not reweigh evidence and we will consider any conflicting evidence in a light most favorable to the trial court's ruling. *Reinhart v. State*, 930 N.E.2d 42, 45 (Ind. Ct. App. 2010). While we defer to the trial court's factual determinations unless they are clearly erroneous, we review a ruling on the constitutionality of a search or seizure *de novo*. *Id.*

[9] The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV; *Parker v. State*, 697 N.E.2d 1265, 1267 (Ind. Ct. App. 1998). In fact, warrantless searches "are *per se* unreasonable under the Fourth Amendment, subject to a 'few specifically established and well-delineated exceptions.'" *Katz v. United States*, 389 U.S. 347, 357 (1967). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure." *Clark v. State*, 994 N.E.2d 252, 260 (Ind. 2013) (citing *Mapp v. Ohio*, 367 U.S. 643, 649-55 (1961), *reh'g denied*). As a

---

'reasonableness' of the conduct of the law enforcement officers, not on the expectation of privacy commonly associated with Fourth Amendment analysis." *Id.* Because Runnells has neither set forth the specific standard utilized in Article 1, Section 11 cases nor presented a cogent argument regarding the reasonableness of the law enforcement officers' conduct, we find that he has waived his claim under the Indiana Constitution. *See* Ind. Appellate Rule 46(A)(8)(a).

result, when a search or seizure is conducted in the absence of a warrant, the State bears the burden of proving that one of the well-delineated exceptions to the warrant requirement existed at the time of the search or seizure. *Danner v. State*, 931 N.E.2d 421, 428 (Ind. Ct. App. 2010), *trans. denied.*

[10] The State argues that the search was lawful since it was a search incident to a lawful arrest. One exception to the requirement of a warrant is the search incident to arrest, which provides that a police officer may conduct a search of the arrestee's person and the area within his or her control. *Stevens v. State*, 701 N.E.2d 277, 280 (Ind. Ct. App. 1998) (citation omitted).

[11] Notwithstanding the State's claim, Runnells maintains that the search was unconstitutional since he was not arrested at the time of the search, and that the pat-down search should be analyzed under *Terry v. Ohio*, 392 U.S. 1 (1968). In support of his claim, Runnells references Captain Archer's testimony stating that he was not under arrest at the time he was searched, nor did he believe that Runnells was armed or dangerous. With regard to Runnells' claim that he was not under arrest at the time of the search, we note that a suspect is considered under arrest when a police officer "interrupts the freedom of the accused an[d] restricts his liberty of movement." *Sears v. State*, 668 N.E.2d 662, 667 (Ind. 1996). The fact that a police officer does not inform a defendant he is under arrest prior to a search does not invalidate the search incident to arrest exception as long as there is probable cause to make an arrest. *Id*. Moreover, we note that the critical issue is not when the arrest occurs but whether there was probable cause to arrest at the time of the search. It is well settled that as

long as probable cause exists to make the arrest, the fact that a suspect was not formally placed under arrest at the time of the search incident thereto will not invalidate the search. *Santana v. State*, 679 N.E.2d 1355, 1360 (Ind. Ct. App. 1997). Here, officers had probable cause to arrest Runnells prior to conducting the search on his person—Bault had reported a shoplifting event and given a description of Runnells. When Runnells exited the store, he was approached by Captain Archer in the CVS parking lot and notified of the theft complaint. At that point, Captain Archer ordered Runnells to place his hands on a car and was then searched. The search yielded stolen merchandise from the CVS store on Runnells' person.

[12] Turning to Runnells' argument that the pat-down search should be analyzed under *Terry,* we find that the evidence was not seized based on *Terry* but rather as a search incident to a lawful arrest. It is well established that the search incident to arrest exception to the warrant requirement "'derives from interests in officer safety and evidence preservation.'" *Id*. (quoting *Arizona v. Grant*, 556 U.S. 332, 332 (2009)). This exception only permits "a search of the arrestee's person and the area within his or her control." *VanPelt v. State*, 760 N.E.2d 218, 222 (Ind. Ct. App. 2001), *trans. denied*. The exception is justified by "the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well *as the need to prevent the destruction of evidence of the crime*." *Id*. (emphasis added).

[13] In the instant case, Bault, the manager at the CVS store, observed Runnells walk to the razor section and pick up a pink electric razor and then walk to

another part of the store where he concealed the razor in his pants. Bault called the police and relayed that information along with Runnells' description—a "[g]uy with a Mohawk." (Tr. p. 92). Once Runnells was outside, the officers, who had a description of Runnells and information concerning the theft, made contact. Captain Archer conveyed to Runnells the reason he was stopping Runnells and proceeded to conduct a pat-down of Runnells' exterior clothing. During the search, a plastic package containing a razor, a USB car charger and an associated cord were recovered from Runnells' person. Bault confirmed that all three items had been stolen from the store.

[14] In sum, the evidence shows that Runnells matched the description given to the police and was found exiting the CVS store with unpaid merchandize. In light of this compelling evidence, we conclude that these facts and circumstances were such that a person of reasonable caution would have been warranted to believe that Runnells had committed the criminal act in question and thus provided probable cause for his arrest. *See Underwood v. State*, 644 N.E.2d 108, 110 (Ind. 1994). Because the officers had probable cause to believe that Runnells had committed the crime of theft, their pat-down search was proper as a search incident to arrest. Therefore, the trial court acted within its discretion

in admitting into evidence the items recovered from Runnells during the pat-down search.[2]

## CONCLUSION

[15] Based on the foregoing, we conclude that the trial court acted within its discretion in admitting the evidence that was seized from Runnells during the pat-down search.

[16] Affirmed.

[17] Bailey, J. and Barnes, J. concur

---

[2] Runnells also argues that the admission of any evidence recovered was fruit of the poisonous tree. *See Clark*, 994 N.E.2d at 266. (as general rule, evidence obtained pursuant to unlawful seizure must be excluded under the fruit of the poisonous tree doctrine). Because Runnells' detention was lawful, the fruit of the poisonous tree doctrine is inapplicable.